May it please the Court, and with permission of Chief Judge Gregory, my name is David Fink, and I represent the appellants in this case, Sandra Eaton, Barbara Brandon Berkenfeld, and Barbara Eaton, and Sandra, I'm sorry, and Ricky Diamond. Your Honor, this case comes from the District Court's decision in Maryland to grant summary judgment in favor of the appellees on the issue of contributory negligence. It is going to be our position that A, it's well-settled law in this district, in this circuit, that summary judgment is typically not granted on issues of contributory negligence, and that contributory negligence is traditionally a matter for the trier of fact. And we will also argue, Your Honor, that the facts in this case would certainly direct the opposite conclusion in any event. How much contributory negligence do we have to find? Any. If we find any contributory negligence, is that the end of the case? It is. Your Honors, in this case, though, I think you'll find by an examination of the record that there is no contributory negligence. And I would, just as a nuance to respond to Your Honor, I would say that while you do have to weigh contributory negligence in the minds of what a reasonable person would do, so the fact that. It's a tough doctrine, this contributory negligence. It is. That's why only four states in the Union still maintain it. But they, in maintaining it, they do have a few ameliorating doctrines in it, I mean, that apply. In this instance, Maryland chooses to say, well, it typically should go to the jury as a question of fact. But if there is some degree at all, 1 percent of contributory negligence, and you pretty much can determine it as a matter of law, that's the end of the case. You've conceded that, right? If there is 1 percent contributory negligence. So you've got a case here, you've got this financial advisor, and you know what makes this case difficult is your clients are pretty sophisticated people. These are not folks on the street that decided to walk in and get some advice. The advisor gives them bad advice. In fact, it looks like he did not know the law. He thought, in fact, they had to do this. The problem is, is that they, you file a complaint. Was it verified, the complaint? In this case? I'm not sure I understand the question. Was it verified? Did they swear to the complaint? Was the complaint that was filed in this case, was it a verified complaint? Yes, under affidavit. And so, as I understood, the complaint stated that they had been advised that a tax person had, or that Morgan Stanley, was it? Morgan Stanley was the one who employed a financial advisor. Advised them to seek tax advice. Not exactly. What that comes out from, Your Honor, is that concession is made in the complaint that they were advised. That's because the pro forma form, which they signed. What was the statement? I'm trying to, that's critical right there. It seems to me, if your clients, and you said it was verified, I don't know, I'm just going on. Typically, a complaint can be verified, which means that everything in it you're swearing was in the complaint to be true. I guess it's like an admission, once you verify that complaint. And you're saying, it is a paragraph. I don't remember the exact language of it, but there's a paragraph in it that basically says that Morgan Stanley told us to get some tax advice. But they said there was only one way to distribute it. That's correct, I believe. So that, the conflict there is, you know, there's more than one way to distribute it. But they told you, you need to get tax advice. Again, to clarify, and we did this in our brief, Your Honor. What that meant in the complaint when they were advised to get tax advice is that they were presented with a pro forma form, which is five to six pages long, which is Lincoln Financial, the annuity company's requirement that you sign this form and make an election as to how you want to get the money. In that form, it does say that there are tax consequences to this decision. You should consult with a qualified tax advisor. Our point is, Your Honor. Among those consequences would be whether you have to take this lump or whether you can get it in some other form. Or more specifically, what are the consequences of which election you would make? So what would a reasonable person do if you saw that? You'd go walk over to your accountant and say, well, at least how much is this going to cost me? What should I do? Respectfully, Your Honor, I think a reasonable person who'd been investing a large estate of their money had been working with a financial advisor who's advertised on Morgan Stanley's website as someone who goes and teaches CPAs on tax consequences, and that's part of the record as well. They're believing that he has knowledge about the product that he sold to their grandmother. They're believing when he says to them, oh, you only have one choice here. It's kind of like if you go to a restaurant, which is fish and chips, and you say, I want the chips. Oh, sorry, we only have fish today. Yeah, but I want the chips. It doesn't matter. There's only fish. They're presented with this form that has a number of choices that they can make. They can have the money paid out over time. They can transfer it. They can take a lump sum distribution. And the expert, the man they've trusted with their financial planning, the man their grandmother invested with for all these years, mother and grandmother, the man who's held out by Morgan Stanley, and he's found to be one of the top 1,000 financial planners in the country, he's held out as someone who teaches. He doesn't know the law. I'm sorry? He doesn't know the law. I think, Your Honor, again, having gotten to know this particular appellee, I think Your Honor is exactly correct. I think he meant well. He just made a mistake. That mistake cost my client $200,000. The question, though, is, Your Honor, that when your financial planner comes to you and says, hey, now that your mother or grandmother has passed away, because it was an estate and it's an annuity and not your personal account, you only have one choice for election. And they asked him. That's in the affidavits, Your Honor, from my clients that they all inquired as to whether there were other options of how to take this money. And he says, no, there's only one option. I would also point out, Your Honor, you'll note in the record, that they came to the Shiva House. That is the house of mourning after grandma passed away. All the kids are sitting there. And he secures the signatures there at that time to suggest that everyone, Your Honor, I can't even imagine the broad scope of a decision against my client in this case would bring. Basically, you go to a CPA to have your taxes done, and he files your taxes and makes a mistake on your return that costs you $180,000. Well, guess what? You're contributory negligent because you didn't go to a second CPA and get advice. That's the ramifications of a decision against my client. He's working with a certified financial planner. He's working with someone with years of experience. He's working with a financial planner who's employed by one of the top investment companies in the country. That country holds him out as an expert who lectures to CPAs on tax consequences. Well, you know, you can't rely on him for tax advice. 99% negligent, and your client 1% negligent for not at least looking at it. I mean, what can you say as a matter of law, if you are told to go look for, that you should get tax advice, as a matter of law, given the fact that who these clients are, they are at least 1% negligent? No, and I think that any reading of this record would say no. Because, again, I think that's exactly not only what the reasonable person would do. It's probably what all of us would do. And Lord knows I've never been called reasonable. It's just not the way we act. We go to a professional, and we rely on them. To suggest what Your Honor is saying, it sounds tempting from an articulation standpoint. That sounds almost like it's a per se liability, though. If I go to my financial planner, he tells me something wrong, then I'm absorbed from doing anything else. Because I went to an expert who I just rely on tremendously, and I don't have to do anything else. If he's giving me financial advice, that's exactly. And that's the end of the case. That's what professional negligence is. Professionals are held to a higher standard when the public seeks out their advice. But this is a contributory negligence question. I would agree with you, if you weren't in the State of Maryland, you might be dealing with a whole different issue here. But you're in the State of Maryland, which has contributory negligence. And I don't know how that works in terms of legal malpractice and everything else. It sounds like to me that could be a serious problem, if it was applied in this way. Which is why Your Honor's point from before is so critical. The fact of the matter is, is that in the four states that still maintain contributory negligence, it is not an issue to be decided on summary judgment. There are, by definition, nuances, inferences that have to be drawn during the time of trial, which are critical. And it's not the place of ---- Was the issue about whether you actually made a timely demand for a jury resolved? Because it looks like you waived your jury trial. That's correct. Well, then the judge was the jury. Well, no, not at this point. She was the fact finder. But there was no fact finding. There was no hearing on the case. There was no trial. Again, Your Honors, I would agree that if the judge had held an evidentiary trial and concluded that my clients were contributory negligence, we wouldn't have much to be here for. The problem is there was no trial. There was no hearing. And we have those trials and those hearings for a reason. Because the judge then has an opportunity to look at the witnesses. What do you think might happen, judge has made a preliminary determination here. We send it back. That same judge goes back and hears all the evidence. And that evidence is basically what she already knows right now. First of all, that's an assumption. I think the fact of the matter is ---- What's an assumption? An assumption that this evidence is pretty much the same. But I don't think that's a fair assumption. I think a trial and a hearing where a judge has opportunity to hear witnesses in person makes a difference. The fact of the matter is there was no hearing in this case. And that's why the case law in Maryland says it's really presumptively improper for a judge to take a case at the summary judgment point and find contributory negligence. Because there was no opportunity to weigh the credibility, to weigh the sophistication of the different parties and see if they were in fact negligent. The fact of the matter is that these people did exactly what any of us would probably do. When we go to get our taxes prepared, we don't typically go to a second CPA to see if he was right. When we go to get a medical opinion, granted, some insurance companies and many smart people will get a second opinion because they want to make sure that they're getting good treatment. But it's not a requirement for professional negligence. When someone holds themselves out ---- What additional evidence would you have presented to this judge here that you maintain? You didn't ask for a jury trial. Judge Thacker makes a really good point. This is a judge determination. And the question is at what point does it become a question of law? He's got all the plaintiffs. He's got the complaint. He's got, I guess, is this a summary judgment? I'm getting my cases up here. This was on summary judgment, Your Honor. So there's evidence in the case. What else are you going to put before this judge? My client's testimony, Your Honor. Their affidavits are, I think, eight paragraphs each. They do say in their affidavits that ---- They've got affidavits before this judge, but they're going to say something that's not on that affidavit. They're going to elaborate on what was in that affidavit. The judge would have an opportunity to see how sophisticated they are. Your Honor started this inquiry by saying your clients are not run-of-the-mill people. They have a certain level of sophistication. And they're going to get on that stand and prove that they are run-of-the-mill people. That's going to be hard to do. The judge may infer from what they hear. And that is one thing that even my client put in one of her affidavits. She says generally I follow the advice of the professionals that I hire. Does she have businesses? Yes. Has she acquired some wealth in her life? Yes. Is it subjected to this determination whether that client is sophisticated or not sophisticated for the purpose of contributory negligence? Or is it an objective with a reasonable person? It's an objective reasonable standard. What difference is it going to make if it's shown that they're not as sophisticated as they ---- I agree, which is why I'm troubled with the idea that a judge who's hearing the case on summary judgment made the inference that they should know better without having met them, without having hearing them, just because they own a business or have a certain amount of money. My client said in her affidavit that she relies on professionals because she's a musician. She doesn't know much about business and finance. So what else would she say on the stand then if she said it in her affidavit? So, again, Your Honor, there are nuances and inferences which can be drawn from more than eight lines in an affidavit. The fact of the matter is that ---- Who drew up the affidavit? Who put the affidavit together? I don't remember the exact timeline of it. There were certain issues brought up in a motion to dismiss early on in the case, and I believe the affidavits were in response to that. Did you submit the affidavit? I did. And did you put in that affidavit the things you thought were relevant? To defeat the motion to dismiss, yes. But not necessarily every element that they're going to be able to testify to in the case. There are nuances in this case, Your Honor. The extent to which the appellee was ---- But you had to deal, basically deal with every element. In the motion to dismiss. When you're dealing with a motion to dismiss, I thought this was a summary judgment stage, but it's used for purposes of motion to dismiss. You're not going to put affidavits in. You mean summary judgment. Earlier on in the case, there had been a motion to dismiss file to which we secured affidavits. It was on the pleading. Yes. And then the affidavit becomes part of the pleadings? Yes. Well, no, it didn't become part of the pleadings, but it was certainly entered as a factor in this case. It was part of the record. But it was submitted for purposes of summary judgment. The affidavits were considered, yes. So you filled out this affidavit, and why didn't you put those facts in there to defeat summary judgment? So, again, the facts are there, Your Honor, but the inferences that can reasonably be drawn from testimony ---- Why not put them in the ---- What do you mean, the way the witnesses look on the stand and that sort of thing? I think that does matter, amongst other things. That's credibility. That's right, and credibility is a matter. When my clients all say in their affidavits ---- But credibility is not being challenged. It's what's in the statement that's being challenged. The statement's already there. But the issue that the court found was that they were contributory negligence as a matter of law because they didn't seek out a second opinion and because they didn't heed to the warning. When they get on the witness stand and say, we had conversations, I asked multiple times, and he told me this is the only option. It's very easy to look at a form and say, hey, it says right here that you should consult tax advice. I did consult tax advice. I spoke to my financial planner. That's very different than the way it comes across in an affidavit when you say, I asked for financial advice. Okay, I asked were there other options. Even in the deposition testimony, it becomes somewhat more clear than what can get into an affidavit, but it's not the same as the judge hearing the evidence and weighing the inferences that can be drawn. And, Your Honor, again, the critical point is that in States like Maryland where there is contributory negligence, they have this broad principle that ---- I see my time is up. May I finish that answer? You may. They have this broad principle that it should be considered by the trier of fact. And to respond to Judge Thacker's point, to Judge Wynn's point, what I think should happen here is that if ---- The trier of fact is the judge. I'm sorry? The trier of fact is the judge. After a hearing and a trial, not on summary judgment. And that's our point. But I don't want to go over my time. Thank you. All right. All right. Mr. Boyce. Good morning, Your Honor. This is Matt Please, the Court, Gil Boyce from QTAC-ROC. I'm going to go out of order and address some of the points that were made by opposing counsel, specifically the point about the advice or the instruction to get independent advice. The record in front of this Court and the record in front of the trial court was that this was not on a form. Yes, the Lincoln form said you may need to seek tax advice. But where the issue gets confused or where it's apparent that it's confused is that the complaint filed by the appellants, paragraph 8 said Morgan Stanley said to get tax advice. There's no reference in the complaint about a form. In the opposition to the motion for summary judgment, there was no reference to a form. It was always clear. It was always understood that the advice was given by Gary Lennett or the instruction to get tax advice. But the challenge is not to the tax advice. The challenge is to the assertion that that's the only way to do it. You can only take the lump sum. That's not tax advice. There's no other way you can do it. That is correct. Once you get that, you don't need tax advice. If that's true, if that's true, if that's the only way you can do it, there's nothing else you can do. Let me see if I can respond. But that's not true. That's the problem. That's not true, and they told them that from the beginning, that that's the only way you can do it is take the lump. And if you've got a financial expert who tells you that, and what is a tax guy going to tell you different than that? I mean, if that's supposed to be true. If that's supposed to be true, let me answer that question, and I'll do it by an example. They are trying to bifurcate what Mr. Lennett said. Mr. Lennett said what he said. He said, allegedly, because Mr. Lennett was never deposed. All we have from Mr. Lennett is his affidavit, and his affidavit says that he told them to get independent advice. Here's the example. My child says to me, Dad, can I use the car? And I said, sure, you can use the car. He told them to get independent tax advice. Independent advice. But not on the distribution. He said that's the only way you can do it. He allegedly said that. There's no record evidence other than the affidavit. Is there conflict in the evidence on that? There isn't. On what point? On that point you just made right here. No, there's not. He only said, he said that's the only way you can get it is a distribution. Any conflict on that? I believe, I believe that since Mr. Lennett was never deposed, his affidavit speaks for itself. He never said in his affidavit that I said the only way you can do it is to take a lump sum distribution if you want your money now. And that's part of why this case is kind of interesting. These are three individuals. Did the plaintiff say that? That he said that? No, but he said that. And their affidavits, what did they say? Reference he said. Their affidavits? There's some judgment now. Life is favorable. Oh, I agree, I agree. That's true. Their affidavits, and I've got them right here. John Exhibit 643, and Mr. Fink says there were six points. I mean, eight points. He wrote six points. All of those six points go to the trust that they had in Mr. Lennett. But that's not an issue. We'll concede that they trusted him. The issue is that when he had an opportunity to go get, when they had an opportunity to go get advice from others, they didn't do it. You're shifting the question. The question is to you, did the plaintiff say that they were told that that's the only way they could do it, has to be fully lump sum, period? Did the plaintiff say that? Oh, yeah, they said that. They said that in their affidavit. Then you're saying there's an affidavit on your side that says contrary, right? I'm saying that Mr. Lennett's affidavit says that he did say that, but there was a condition. If the condition was you want your money now. And let me see if I can put this in a different perspective. So that's a dispute, a fact. No, I just mean a fact. No, the one says the only way to get it is lump sum. That says the only way to get it is lump sum if you want your money now. That is a dispute. Let me see if I can put this in a different perspective. Well, no, enough seats. How can you deal with that? Is that not a dispute? That's not a dispute. It is a dispute. One has absolute, one way to get it. The other one is one way to get it with a condition. The condition preceding is you have to want to get it now. If you want to get it now, that is the only way to get it now. That's quite different than, no, I don't care what your wishes are. The only way to get it is lump sum. You're telling me that's not a dispute? That is a dispute. That's what we're talking about. That is a dispute. So you have to extend every inferences at this point, and all those facts and disputes are resolved for the plaintiff. And that's exactly what the trial court did. Well, why are we wasting all this time on Judge Wynn's question? You should have just said up front, yes, they were told that the only way to get it is lump sum. End of story. I'm sorry. I'm sorry. But what I want to talk about is this. That's not a legal question. That's just a product question. You sold the product. You ought to know the product. The product says that's the only way you can get it. How is that a legal question? I don't know what you said. If you have legal tax questions, you need to go to a lawyer. But you go to a lawyer, for example, if there's something to talk to a lawyer about. Admittedly, Mr. Lennon was confused. He was negligent. He was negligent, because that's what the trial court said. Right. But that's the starting point. Okay. Okay? The following point is, was there contributory negligence? If there was one percent, if there was one thing. I'm a Virginia lawyer. I know contributory negligence. I've practiced law for 20 years. I know exactly what contributory negligence is. And I know Virginia has balance, too, because you can't get summary judgment on the basis of the plaintiff's deposition in Virginia, because they know how difficult and it is inherently a fact question. But go ahead. Yes. Let me get back to my point. The judge in this case had a complete record, a full record, including 62 statements of undisputed material facts on behalf of the appellees. What were the facts that established contributory negligence? First. Was it a complaint? The statement in the complaint they made that said that Morgan Stanley had advised him of attacks? That was one of them. That was one of them. You denied it. What's that? Did you deny that in your answer? You denied that. No, I don't. No, I don't. Look at it. Look at the response to that particular one, and you gave a general denial, something you can't do in federal court now. A general denial? Denied. No, that's not correct. It's not correct. I don't believe the record reflects that. All right. But I'm going to answer your question specifically. The first point is that they did not get a second opinion or independent advice. How did you answer that question? Do you have that when you come back? Why don't you take a look? Tell me, how did you answer the respond? Because you had to respond. I mean, to make an allegation complaint, what was your answer? I don't have that in front of me, Your Honor. You don't have your response to the complaint? I have the summary judgment papers. But you don't have the response to complaints? I don't have that in front of me, Your Honor. Okay. Take a look at that, and when you go sit down, I know you don't have any more time, but tell me if you see anything different there than the denial. That's fine. You said the contributory negligence was they didn't get a second opinion. That's one of them. The second point is they did not read the documents before signing them. And what would the documents have told them? The documents would have simply told them that they had more than one option. How so? It just talked about withholding, didn't it? No, no, no, no, no. The forms listed every option that was potentially available to them, and that's exactly what the trial court found. Had they looked at the documents, the documents spoke for themselves. It said, here are your options. They chose lump sum, but there were other options that were available to them. So by not reading the forms and just signing the forms. Okay, give me an example of another box to check on the form. Just give me one. You've got the record. Tell me another box. They checked lump sum. Give me another check. One of them was a five-year distribution. Another one was whether, if certain circumstances were present, where you could roll it over to another annuity. Those are the ones that come to mind right away. Right. And he counseled it out by saying, notwithstanding what's on there, you only have one option. That's what they were told. That's correct. That is correct. Okay. All right. So that's like you're going to buy a car and someone says, you know, I'm going to give you five pages of small print, but I can tell you right now, there's nothing in here that says you can do anything other than finance this with me. Right? And you say, but that's not a legal question. That's a question of fact. It's a product. I know some annuities, when you die, your family cannot receive it in a way other than lump sum. That's a product. He sold the product. He told them. So why is that, as a matter of law, I'm contributory negligent when I say, well, you sold a product, you're a smart person, you're well-known, and you say this product, no matter what it says as options, there is only one option. That's a fact. That's not an opinion. If he gave an opinion like, well, you know, you can take this and you might want to tax shelter it. And he starts saying, well, you can tax shelter this way. That's a tax opinion, legal opinion. But how is that an opinion when you say, as a matter of fact, this product that I sold you only gives you one option, notwithstanding what's on there? I don't understand. How is that, as a matter of law, even 1% as a matter of law? You sold the product. You sell the Mercedes-Benz or whatever the product is, and you say, no, this car does not come with V8 power. Well, you need to get a lawyer and see what you can do to make them give me a car with a V8. No, we don't make them. You can't get it. Why is that unreasonable? Why would a reasonable person say, okay, well, I see the boxes here, but you told me that's my only option. I'm going to check the one you told me. How is that unreasonable as a matter of law? It's unreasonable as a matter of law, Your Honor, because he was specifically, or they were specifically, instructed to go seek independent legal advice or tax advice. But that's not an opinion. Yes, if someone gives you an opinion about something, yes, you should seek an accountant and a lawyer. But that's not an opinion. That's a statement of fact. This product does not give you that option. You can bring Perry Mason, Matlock, anybody you want to bring is not going to change. It's like the old joke about the waiter who had the butter, and the rich guy said, I want two. And the waiter says, listen, I'm in charge of the butter. Everybody gets one pack. He was in charge of the butter. I don't care how many options it says, I'm telling you there's only one. That is not an opinion. That's a fact about the product you sold. Why is that now, as a matter of law, you're supposed to run out and get a battery of lawyers and say, you know, he told me the product he sold me, I only get one option. I want you to go and sue him and say that, or her, because they said the product, as a matter of fact. That's not what I'm saying, Your Honor. What are you saying? What I'm saying is that when Mr. Lennon told them to get independent advice, it's obvious that he was not sure about what he was talking about. It was obvious. And he says, you need to go get independent advice. So you talk about what a reasonable person would do. Independent advice about what? About your options. About your options. That's what your person said, right? Yes. And that's what they say in their complaint. Okay. But going beyond. I thought it said you should get tax advice or legal advice. But going beyond that, they didn't read the forms. Two of the claimants, or plaintiffs, had been powers of attorney for Mrs. Blumberg. And they had access to all of the information. You know how many people buy a car with five pages of small print and don't read it? How many want to guess? I bet you, at best, one out of ten does. And that's the person where people are like beating on the table with their fingers like, Come on, Al. No one reads all of that. I don't think you can say that's unreasonable. That's a matter of law not to read five pages of single page. If that was the law, you'd say, well, there's burgers on you. It's a reasonable person. A reasonable person, if you trust somebody and you ask them a question, and they say, you know what? I think you need to get an independent advice on this. If you trust that person. See, that's why a trial is important. You see, you just said something very important. That's the beauty of a trial. It adds context. Because you want to suggest that you're a good lawyer, you're doing what you're supposed to do. But you say, you only have one option. But, you know, if I'm wrong about that option, that's not the context. It may be that, no, that's it. And that is a general statement about tax advice and those kind of things. But the way you framed it as if, like, right in that same paragraph, that's what was said. You only have one option. But if I'm wrong about it, you should see a lawyer. But at trial, they might find out that that's not the context at all. The trial judge had a complete record. It wasn't trial in the case, was it? It was a summary judgment. It was summary judgment. And a trial court in a bench trial. This is not a trial. This is summary judgment. Why do you keep saying that? No, because at the end of the day, the issue is, as Judge Thacker says, if the trial judge rules as the trial judge did and found that the appellants were contributory negligent, if you send this back, the trial judge is going to come to the same conclusion. No, you know what's going to happen? If you send this back, that trial judge is going to do what he or she has swore to God in all his symbol, is to listen to all of the evidence presented or attendance as well as exhibits and make a decision as best as he or she can about a preponderance of the evidence. That's the faith that we have in all of our judges who we send cases back to. I don't think we can have a fait accompli when you don't have a head of trial. So you can never have summary judgment decided on contributory negligence? That's not the law. Well, you know. The May versus July case. Well, first of all, we don't have to get to it perhaps in this case, whether or not in any case. The question is whether or not it is in this case. I understand that, Your Honor. But I'm saying the idea that you cannot have contributory negligence found as a matter of law on summary judgment, that is not the case. There are numerous cases that say that. And Judge Ennis's opinion. Well, absolutely. Some people concede their case by their own evidence. Judge Ennis's opinion was very thorough. It was very thorough. She went through every element of the claim, and she went through the elements of contributory negligence. And unless her findings are clearly erroneous, and I don't think that you can find that her decisions were clearly erroneous, yet much stand. Stand is not clearly erroneous. You've got the wrong standard. No. Summary judgment. There's no fact supposed to be even in question, right? They didn't make that determination because they were not disputed. If there was a dispute, any factual question that was left unresolved, the court couldn't make it. So how do we have an erroneous standard in that sense of finding a fact? No. That's a matter of law. Let me ask you this. Let me point this out. No, I'm not going to. I'm asking you the question. Findings of fact by a district court sitting without a jury are presumptively correct and can't be set aside unless clearly erroneous. That's right. Sitting without a jury. That's a trial. That's right. This wasn't a trial. I realize it wasn't a trial. But I don't think so because you're giving me a standard that doesn't comport with summary judgment. What we do here at this point, every inference is drawn against you. Every one. Summary judgment, every inference is supposed to be drawn in favor of the nonmoving part. That's right. And the judge in this went through every element of the claims. What about the inference that he wasn't told contemporaneous with, you have no option but this. But if you are uncertain or have questions about it, you need to talk to somebody else. Supposedly that's an inference drawn for you. That's an inference drawn for me. But you don't need that inference solely to conclude contributory negligence. There were other factors that the judge relied upon. Like what? Like they didn't read the form. Like they didn't contact the annuity companies. Like even after the case was filed, Plaintiff Birkenfeld wrote Commonwealth and said, hey, can I reverse this decision that I made to take a lump sum distribution? And this is in the record. And they sent him the forms to complete, and he never sent them back. Never sent them back. So there are a number of factors that the judge relied upon, and I thought that she was very, very articulate in laying out all of the reasons why. Do you have any evidence in the record that that would have reversed, that that could have been done successfully? Do I have any evidence that it could have been reversed? Did you put in any evidence that had they acted then, that would have changed their circumstances? That's where the record lies. That's where the record lies. But basically what you're saying is that you can absolve yourself of all fault and all wrong as a financial planner by saying, you know, they should have gone back and talked to somebody else, another financial planner, all these things, when you just, you know, as the French would say, it's the piece de resistance is what you told them as a matter of fact. What I'm saying, Your Honor, is there were a number of factors that the court relied upon that were in the record, in the record, that supported the opinion. That's what I'm saying. And to go back to my example, I like your examples, but go back to one of my examples, you know, my son's asked me, can I borrow the car? And I say to him, yeah, you can borrow the car, but don't go on the highway. He takes the car. But don't go on the highways? Yeah. Okay, go ahead. All he hears, you can take the car. He goes on the highway and something happens. They're trying to bifurcate what Mr. Lennett said. And obviously, that's what they're trying to do. It was in tandem. It was one sentence. So for the court to say that. That's your version of it. You're the daddy and you're saying, I'm taking your version. There the son said, no, he didn't say that. He just said, yeah, you can take the car. But you know what? And then later he said, you know, if you go on the highway, you've got to be careful. But you know what, Your Honor? And I know my time is up. At the end of the day, there were no disputed facts concerning the facts that the court relied upon to find contributory negligence. They never, ever contested one of those points. Not in opposing summary judgment and not here on appeal. And all the judge needed to do was to look at the record and find that there were no disputed material facts on the issues related to contributory negligence to issue a ruling. And the burden was on who to establish contributory negligence. It was on us. You had the burden. And we presented undisputed evidence to the court, 60-something statements of undisputed material facts, to which they responded to none of them. None of them. The court specifically addressed every point in a very, very comprehensive opinion and concluded that at least 1 percent, 1 percent, that's all you need for contributory negligence, that there were at least 1 percent. It's amazing how you ever see a plaintiff ever get summary judgment on negligence claim cases. I'm sorry, what? You ever seen a case where the plaintiff gets summary judgment on negligence? Affirmative summary judgment? Yeah. I'm not familiar with it. It never happens, does it? I mean, I'm sure it happens. Because they have the burden to prove their case. Just like you, you have to have every element. In other words, assumption of the risk, that they had the knowledge and to be aware. There are a whole lot of elements to contributory negligence. A lot of elements. And those elements were addressed by the judge. Okay. She did an outstanding job. She went item by item by item. All right. On a complete record. And my time is up. I understand. Thank you. Your Honors, I have five quick points I want to make. First, two of them address elephants that are in the room. Your Honors, the idea that Mr. Lennet, the appellee, told my clients, you should really go get tax advice. That's not something that my clients admit in the record at all. They do say that in their complaint that Morgan Stanley advised them, although in their depositions it became clear that what they're saying is Morgan Stanley and Lennet presented them with a form. So opposing counsel said that your clients, you didn't reply to their listing of undisputed facts. Is that accurate? No, I don't think it's accurate at all. For example, Did you file something? At which stage in the case, Your Honor? When they filed their listing of undisputed facts. Well, again, we opposed their motion for summary judgment and put specific facts in there. What facts do you dispute? So, for example, on page 646 of the record, Mr. Lennet was contacted by my clients six months after he told them that this was your only option. Sometime around six months to eight months later, my clients are going to do their taxes and their accountant tells them, well, why on earth did you do this? Because the advisor told us that was our only choice. What's in dispute? So here, Your Honor, again, page 646 of the record, Mr. DiAppelli responds with an email and he says, oh, the lump sum option was your only choice. He didn't say anything about if you wanted to get it all now, which is an inference which. The district court includes that in its opinion at JA 686. The court acknowledged that Plaintiff Birkenfeld readily admitted that he had consulted other advisors he would have learned of their disbursement options and that failing to do so was imprudent. Sure. And that happens at a deposition. In other words, that it is true he gave that bad advice. Well, what Your Honor is actually quoting from is from Birkenfeld's deposition. But accept it. If we do it, we say, okay, that's a truth. That's true. That's what happened. He gave him bad advice that you could only do it with lump sum. That established some negligence on his part. The question here is contributory. Agreed. But Your Honor was asking before about the nuance specifically that he said also you should get tax advice. That's not what he says in his email. He just tells him no. No, you admitted that in a complaint. You said that. You said what was standard and it said get tax advice. Through giving them a form, not verbally. We didn't say it was verbal. It was through, but I don't recall the through giving the form as being part of your complaint. That's true. We didn't specify. So that's something you added to it. That's not in your complaint. We're entitled to that inference at this stage in the case. There's no evidence. No, you've got this undisputed facts in there. You don't need the inferences and stuff if the facts are right there to speak for themselves. All of my. You could add any other condition you want to own it, but the judge is looking at something you said in the complaint. Judges. And you're at summary judgment stage and you then put forth an affidavit. If you think that complaint is inaccurate, then I would think in that affidavit you would address the further need to put that additional fact in there. And we did exactly that in all the affidavits. In the affidavit. Yes. In addition to the forms. In the affidavits, though, they say specifically that they were told only that it was their only option. There was no nothing in there. That's already accepted. It's true. That's negative. Got that contributory negligence is what we're talking about. Right. So, again, Your Honor, just to go to what's disputed. It is disputed. And that's what. All the points that hurt that her honor relied on. So, first of all, the idea that the appellee told them they should get independent tax advice is disputed. Except it's true. But it's in the affidavits. And it's in their depositions. In the deposition, Ms. Eaton specifically says, if I had been told that I had other options or if I had been told that I needed to get other tax advice, I would have done it. She says that's in our record as part of the deposition. She says, if Gary had told me that I needed to get independent tax advice, I would get it. She was asked exactly this question by counsel. You said in your complaint, she says, I know that it's on the form. I've seen that now. But Gary never said that to me. Well, that was pretty quick. She said it's in the complaint. You say, I know it's now on the form. But what the judge is looking at says, you just said it right here in the complaint. But that's why we need a trial, Your Honor. That's why inferences have to be. To explain why you admitted something in the complaint and failed to address it in the affidavit at this point. To explain why inartful language was used in the complaint. Yes.  But nevertheless, Your Honor, I would point out one other thing. If you look at page 94 of the record, Judge Zinnis was the second judge who had an opportunity to look at this case. Judge Motz had this case in front of him on motion to dismiss. And Judge Motz went through exactly like Judge Zinnis did. It was a different standard. It was a different standard. But his findings weren't any different. And his findings were very specific. It's, again, page 94 of the record. Judge Motz says they were certainly entitled to rely on their professional financial planner's advice that this was their only option. They were certainly entitled to rely on his advice that there were no other options. No, that can be true. And that will establish negligence. But it won't relieve you of contributory negligence. Actually, Judge Motz says it does on page 94. And that's exactly the point that I want to make. Not only can reasonable people differ, different judges that have reviewed this case have come to different conclusions. Judge Motz didn't just say that for the purpose or the stage of the case. It's two different standards. I understand. Even if he says all that, he doesn't need that to be able to say this abides 12B6. Fair enough. But, again, that's the findings that he makes. I'm just saying reasonable people that look at this could find it. Because we're talking at a stage now where all inferences go to me. That's not much different than the standard of an option to dismiss. It actually helps you because then you're not just stuck with your pleading. Because her affidavit or her response adds to it. Because she said, if he had told me that, he never did. Exactly. It's only dismissed when you're pleading. She's giving, again, a spit. And that makes the inference that if he had told me that, I never would have done it. You can't just ignore that. Again, so we wholeheartedly agree. But, again, the fact that he reconfirmed himself in an email without any nuance. And, Your Honors, the question is, again, simple. What would a reasonable person do? And, again, we have Judge Mott saying that a reasonable person could certainly have relied on their tax advisor as this. A reasonable person may not have looked at the form in face of the fact. But let's look at those forms again for a second, which Your Honors questioned about. These are forms which Lincoln Financial provides to everyone who's distributing an annuity. Half of those options never apply to anyone. They specifically rely on their financial planner to tell them. So there are options on there. There are five options. There are options on there. And, Your Honor, if you look at page 531 of the record, where one of those forms is right at the beginning, it says specifically on those forms, if it happens to be that one of these people is a minor or da-da-da-da-da, all these things that may apply. It also says, important information, please read carefully and completely. That's the first thing it says in bold. It does. And then right after that, it lists six pages, half of which may not apply to any situation. You rely on your financial planner to tell you. For example, in the second paragraph, it says, additional documentation and instructions may be required if the beneficiary is an estate or if it's a trust or if it's a guardian or if it's a corporation. If you're not one of those things, then some of these things don't apply. You get to first page, and Lincoln's telling you this applies to everything that we've got. Am I over time? Well, you're having to cut you off. Go ahead. So this form tells you that there's a lot of choices you have to make, and then it goes on and tells you that half of them aren't going to apply to you if you're a guardian, if you're a corporation. You have to know which boxes to check, and that's what you rely on your advisor for. It's not like this is a form given to somebody who's looking at a lunch menu and said, do you want a hot dog today or do you want a hamburger? It's not like that. Six pages. It's only six pages. I understand. How much money was involved? About a million dollars. Six pages? I think I would have read it for a million dollars. And they did read it. But, again, they're financial planners telling them that these options don't apply to an estate. These options don't apply to your situation. Well, this case doesn't have to be as complicated as we make it. It's just we're dealing with contributory negligence, which throws a whole different ballgame. Contributory negligence essentially follows the same analysis as the negligence claim. And the issue in this case, reasonable person is a standard by which we go, but we basically look to see if there's a duty breach of the duty causation and damages in the case that arises from it, even from the contributory negligence side of it. And here the question is we all pretty much assume everybody has a duty to make sure you regard your taxes. The question is, is that duty in this case absorbed by the fact that they get financial advice? You seem to think getting that financial advice does that per se. I'm not sure it goes that far. But your point being is that in this particular case it relieved them of the need to undertake that duty because this advice had relieved them of the duty to do anything more. And that is the standard of what professional negligence is. When you seek out a professional and they give you advice, you're entitled to rely on that advice. Otherwise, as I said, the broad ramifications of an adverse decision is that everyone who goes to an accountant or a lawyer or a tax or a financial planner, they're now not permitted to accept their advice. There is no higher standard of professional negligence. Is this court ready to tell all the professionals that they now have that extra protection of insulation, that even if you give wrong advice, even if you give bad advice that you're wrong about, you're not going to be held to it because everyone had the option of getting a second opinion? Thank you. Thank you, counsel. I will ask the clerk to adjourn the court until tomorrow, and then we'll come down and greet counsel. This honorable court stand adjourned until tomorrow morning. God save the United States and this honorable court.
judges: Roger L. Gregory, James A. Wynn Jr., Stephanie D. Thacker